```
UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| VICTOR BAJANA,<br><br>         Petitioner,<br><br>    - versus -<br><br>BRUCE YELICH,<br><br>         Respondent. | MEMORANDUM<br>AND ORDER<br>11-CV-5817 |

A P P E A R A N C E S

  VICTOR BAJANA
    Bare Hill Correctional Facility
    181 Brand Road
    Malone, New York 12953
    *Petitioner* Pro Se

  RICHARD A. BROWN
    Queens District Attorney's Office
    125-01 Queens Boulevard
    Queens, New York 11415
  By:  Ellen C. Abbott
    *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

  Victor Bajana brings this *pro se* habeas petition, seeking release from the Bare Hill Correctional Center. Bajana contends that his ongoing detention, stemming from a state court judgment of conviction for robbery and criminal possession of stolen property, violates his Sixth and Fourteenth Amendment rights. For the reasons set forth below, I dismiss the petition.

## BACKGROUND

  In February of 2009, Bajana and his co-defendant, Francisco Sierra, were tried in the Supreme Court of the State of New York, Queens County, on one count of Robbery in the Second Degree, N.Y. Penal Law § 160.10(1), and two counts of Criminal Possession of Stolen

Property in the Fifth Degree, N.Y. Penal Law § 165.40. During trial, the government presented evidence of the following:

At around 2:30 on the morning of February 23, 2008, Narsico Mauricio was walking home from a restaurant in Queens when he was grabbed from behind by two men. One of the men hit Mauricio in the face and restrained him by his neck. The other removed the contents of Mauricio's pockets, which included $1,500 in cash, a wallet with approximately $10 in cash, and a white cellular phone.

Shortly thereafter, three police officers appeared on the scene and approached Mauricio, whose face was bleeding. The officers asked Mauricio what happened. Mauricio, who spoke minimal English, said, "punch, punch," and he made a punching gesture to his face. He then pointed to two men walking away on the same street and said, "them, them."

Mauricio started running towards the men, and the police officers followed. The two men began to walk away rapidly. One of the police officers, Scott Griczewicz, ordered the men to stop and they did so. Another officer, Donald Kipp, saw one of them drop a phone onto the ground. When the officers and Mauricio caught up to the two men, Mauricio repeated, "them, them." Griczewicz placed the two men under arrest. They turned out to be Bajana and Sierra, and Kipp identified Bajana as the one who dropped the phone.

Once Bajana and Sierra were under arrest, Griczewicz searched them and recovered $12 in cash from Bajana's jacket pocket. The bills had red marks on them, as did Bajana's jacket and Bajana's and Sierra's hands. These marks appeared to be blood, and DNA testing on the marks on Bajana's jacket ultimately confirmed that those marks were Mauricio's blood.

Griczewicz retraced the route that Bajana and Sierra had taken. He found a black wallet on the sidewalk. Kipp recovered the dropped cell phone. Mauricio identified both as items that had been taken from him in the altercation.

Bajana and Sierra were transported to a local precinct, processed, and placed in holding cells. At some point while in the precinct, Bajana asked Griczewicz why he had been arrested. Griczewicz replied that he had been arrested for assault. Bajana then explained that Mauricio had approached him and asked him about girls.

At trial, Bajana admitted that he had a confrontation with Mauricio on the night in question. He argued, however, that the case was about a "drunken misunderstanding blown out of proportion" and that he never assaulted Mauricio or stole anything from him. Trial Tr. 300. He highlighted several "inconsistencies" in Mauricio's various accounts of the night in question and suggested they created reasonable doubt regarding Bajana's guilt. Trial Tr. 303.

Bajana and Sierra were convicted on all counts. Bajana was sentenced to one year of imprisonment on each of the two stolen property counts and seven years of imprisonment and five years of post-release supervision for the robbery count. The sentences were ordered to run concurrently.

Bajana appealed his conviction to the Appellate Division, Second Department. Bajana argued that his conviction should be overturned because the prosecutor engaged in misconduct, he received ineffective assistance of counsel, he was arrested without probable cause, his indictment was defective, he gave coerced statements to the police, and DNA testing was not conducted on the marks the police reportedly saw on his hands. The Appellate Division affirmed Bajana's conviction on March 22, 2011. Bajana then sought leave to appeal to the New York Court of Appeals, raising all of the same grounds he raised before the Appellate Division.

His application was denied on June 16, 2011. Bajana filed the instant petition for habeas corpus on November 30, 2011.

## DISCUSSION

A.  *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996, federal habeas relief is available when a "person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal habeas court may grant habeas relief "with respect to a[] claim that was adjudicated on the merits in State court proceedings" only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). However, when a habeas court considers a claim in the absence of a state court merits determination, it reviews the claim *de novo*. *Cone v. Bell*, 556 U.S. 449, 472 (2009).

B.  *Analysis*

Bajana identifies four grounds upon which he believes habeas relief is warranted. He contends that he must be released because during trial (1) the prosecutor committed prejudicial misconduct during her summation, depriving him of due process; (2) his Confrontation Clause rights were offended; (3) he received ineffective assistance of counsel; and (4) the evidence presented against him was legally insufficient.

    1.  *Prosecutorial Misconduct*

Bajana argues that the prosecutor engaged in misconduct during her summation by inappropriately appealing to the jury's sympathies, vouching for Mauricio, and inviting the jury to speculate about facts outside the record. Bajana raised this claim before the Appellate

Division, which denied the claim on procedural grounds, concluding that it was "unpreserved for appellate review because [Bajana] failed to object to the comments he . . . challenges, or failed to request additional relief when the Supreme Court sustained objections or provided curative instructions." *People v. Bajana*, 919 N.Y.S.2d 194, 195 (App. Div. 2011) (internal citations omitted). The Appellate Division reached the merits of the claim nonetheless: "In any event, reversal is not warranted because the prosecutor's remarks did not, singly or in combination, deprive the defendant of a fair trial." *Id.* at 195-96.

Because the Appellate Division, the highest state court to address the issue, concluded that Bajana's prosecutorial misconduct claim was procedurally defaulted, Bajana's conviction rests on independent and adequate[1] state ground,[2] and I may not grant habeas relief. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). However, even if this were not the case, I would deny relief on the merits.

Bajana first complains that the prosecutor described Mauricio as a "vulnerable" and "clearly ethnic" man, who was uneducated and could "barely put his sentences together." Trial Tr. 801-03. According to Bajana, such descriptions of Mauricio served no purpose but to inflame the jury.

As Bajana suggests, it is a "fundamental principle" that the "'prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury,'" as such arguments may deprive a defendant of a fair trial. *United States v. Modica*, 663 F.2d 1173, 1180 (2d Cir. 1981) (quoting ABA Standards for Criminal Justice 3-5.8(c) (2d ed. 1980)); *accord*

---

[1] This is not an "exceptional case[] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

[2] A state procedural default qualifies as an independent and adequate ground and will preclude federal habeas review "unless the habeas petitioner can show cause for the default and prejudice attributable thereto or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (internal citations and quotation marks omitted).

*United States v. Hayward*, 420 F.2d 142, 146 (D.C. Cir. 1969) ("It is fundamental to sound procedure in federal criminal prosecutions that counsel refrain from 'appeal [that is] wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only [be] to arouse passion and prejudice.'" (quoting *Viereck v. United States*, 318 U.S. 236, 247 (1943)) (second alteration in original)). When evaluating a prosecutor's statements, the ultimate question is whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The prosecutor at Bajana's trial did not exhibit model behavior,[3] but I cannot conclude that the Appellate Division's determination that Bajana received a fair trial was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The prosecutor discussed the appearance of the victim as support for her argument to the jury about the defendant's motive for the crime. She explained that the crime was a "crime of opportunity," and that the Mauricio, because of his small stature and vulnerability, presented an easy opportunity for a robbery. Trial Tr. 801. Furthermore, the prosecutor's discussion of Mauricio's limited education and language abilities occurred in the context of her argument about why there were some inconsistencies in his testimony. The prosecutor asked the jury to infer that some of these inconsistencies were "actually just part of the language barrier." Trial Tr. 803. These were proper topics of discussion during summation and did not deprive Bajana of due process. The Appellate Division correctly applied federal law in rejecting Bajana's contention to the contrary.

Bajana next argues that the prosecutor improperly vouched for the credibility of Mauricio. Specifically, Bajana maintains that he was unconstitutionally prejudiced by the

---

[3] In the normal course, a prosecutor should avoid referring to the "ethnic" appearance of any witness or defendant.

prosecutor's repeated suggestions during summation that the jury could trust Mauricio's testimony, that he had not embellished his testimony, and that the content of his testimony reflected its truth.

A prosecutor must avoid expressing her personal opinion about the credibility of the government's witnesses. This is because a "prosecutor's vouching for the credibility of witnesses . . . pose[s] two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

In this case, the prosecutor argued vehemently to the jury that it could trust Mauricio's testimony, but she did not do so improperly. *See United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992) ("A prosecutor is not precluded from vigorous advocacy . . . in summation."). At no point did she inject her personal opinion into the case or otherwise suggest that she knew information about Mauricio of which the jury was unaware. Although she made bold statements about Mauricio's credibility, she specifically connected them to the evidence presented and the demeanor of Mauricio on the stand. For example, she suggested that the jurors could believe Mauricio because he "was not sophisticated enough to make up the sequence of events he testified to," as they could have inferred from his testimony and demeanor on the stand. Trial Tr. 803. She also suggested that the jury could find Mauricio credible because "he didn't embellish here," as evidenced by the fact that he admitted when he did not know the answer to questions posed to him. Trial Tr. 804-05. In addition, the defendants attacked Mauricio's credibility, *see, e.g.*, Trial Tr. 304 ("Mauricio is not a believable person."), thereby

7

inviting the government's response and mitigating any prejudice that resulted. *Lawn v. United States*, 355 U.S. 339, 359 n.15 (1958); *Young*, 470 U.S. at 17-18. In addition, the court specifically instructed the jury, "[Y]ou will weigh the testimony, judge the credibility and decide for yourselves." Trial Tr. 804. Such a curative instruction further served to alleviate any prejudice caused by the prosecutor's argument. Accordingly, I defer to the Appellate Division's decision and deny habeas relief on this ground.

Bajana argues that the prosecutor engaged in misconduct in a third manner. He suggests that she invited the jury to speculate and became a witness herself when she asked the jury to make conclusions that were not proven by evidence. Specifically, Bajana objects to the prosecutor's suggestion that blood might have evaporated from Bajana's jacket and that the inconsistencies in Mauricio's testimony might have been due to language difficulties.

A prosecutor does not invite the jury to speculate or become a witness simply by suggesting that the jury make an inference supported by the evidence presented. And "[t]he government has broad latitude in the inferences it may reasonably suggest to the jury during summation." *United States v. Casamento*, 887 F.2d 1141, 1189 (2d Cir. 1989). While a juror might have rationally rejected the inferences that the prosecutor asked him to make, I cannot conclude that those suggested inferences were unreasonable, much less that the Appellate Division's implicit determination that they were reasonable was contrary to or an unreasonable application of clearly established federal law. Accordingly, I deny habeas relief on this basis.

2.  *Confrontation Clause Violation*

At trial, Kipp testified that when Mauricio caught up to Bajana and Sierra on the night in question, Mauricio said "that was them." Trial Tr. 684. Bajana's counsel thereafter moved for a mistrial, and the court instructed the jury that the testimony was stricken and they should disregard it, but the court did not declare a mistrial. Bajana now maintains that the

8

mention of Mauricio's out-of-court identification deprived Bajana of his confrontation rights, in violation of the Sixth Amendment. Because this claim was not addressed in the state proceedings,[4] I consider the merits *de novo*.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court declared that the Confrontation Clause of the Sixth Amendment demands that testimonial statements must be subject to cross examination. This does not mean, however, that out-of-court testimonial statements may never be admitted at trial. Rather, if a declarant is available at trial to be cross examined regarding his out-of-court statement, this opportunity to confront the declarant satisfies the Sixth Amendment and his out-of-court statement may be introduced. *United States v. Owens*, 484 U.S. 554, 559-60 (1988); *California v. Green*, 399 U.S. 149, 164 (1970).

Because Mauricio testified at trial and Bajana had the opportunity to cross examine him about his out-of-court identification, Bajana was accorded his confrontation rights. During Mauricio's direct testimony, he was asked what he told the police when he caught up to Bajana and Sierra. Mauricio testified that he said, "[T]hose are the people that took everything from me." Trial Tr. 542. Mauricio then testified to a virtually identical statement on redirect. Trial Tr. 588 ("I told the police, [']That's them.[']").[5] Bajana cross examined Mauricio after each of these statements was admitted at trial. Although Bajana chose not to question Mauricio specifically about his out-of-court identification, the Confrontation Clause demanded no more

---

[4] Bajana did not raise a Confrontation Clause claim before the Appellate Division and has no other procedural mechanism through which to bring it in the state courts. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Accordingly, although I deem this claim exhausted, it is procedurally defaulted. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). Nevertheless, I reject the claim on the merits.

[5] In addition, before Mauricio took the stand, Griczewicz testified to the same basic statement: When Mauricio ran up to Bajana and Sierra, he said "them, them." Trial Tr. 327. Defense counsel did not object to the introduction of the out-of-court identification when introduced by Mauricio or Griczewicz.

than the opportunity to do so. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Bajana was clearly afforded such an opportunity.[6]

       3.      *Ineffective Assistance of Trial Counsel*

Bajana argues that he is entitled to habeas relief because he was denied effective assistance of counsel at trial. He asserts that his trial counsel was deficient in failing to present an expert witness to testify regarding the likelihood of misidentification during crimes of violence and to object to "crucial evidence utilized during trial absent foundation testimony." Pet. at 8. Bajana did not raise an ineffective assistance claim on these particular grounds during the state proceedings,[7] and I consider the merits of the claim *de novo*.

The Supreme Court established the following standard for claims of ineffective assistance in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). Thus, to make out his claim Bajana must demonstrate both that his attorney's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

---

[6] Because I decide this issue on other grounds, I need not and do not consider whether Mauricio's out-of-court identification of Bajana was testimonial. *See Davis v. Washington*, 547 U.S. 813 (2006); *Michigan v. Bryant*, 131 S. Ct. 1143 (2011).

[7] Because Bajana is no longer able to raise his ineffective assistance claim in the state courts, *see* N.Y. Crim. Proc. Law § 440.10(2)(c), I deem his claim exhausted. 28 U.S.C. § 2254(b)(1)(B)(i); *Aparicio*, 269 F.3d at 90. However, because he did not raise the claim in the state courts, his claim is procedurally defaulted. *Aparicio*, 269 F.3d at 90. Yet, as with his Confrontation Clause claim, I reject the claim on the merits.

10

Bajana fails to meet this standard. With regard to his argument that counsel was deficient in failing to object to evidence introduced without proper foundation testimony, Bajana supplies no specific information about the basis for his claim. He does not identify what evidence he believes his lawyer should have objected to, nor does he articulate how the introduction of such evidence was prejudicial. Relief is not available for such a vague claim.

Turning to Bajana's contention that his lawyer was deficient because he failed to present expert testimony, I similarly conclude that habeas relief is unwarranted. Lawyers are entitled to make strategic decisions regarding how to defend a case and, in order to state an ineffective assistance claim, a "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) (internal quotation marks omitted). Bajana's trial counsel gave an opening statement admitting that Bajana and Mauricio had an interaction on the night in question but asserting that it was some kind of drunken misunderstanding. In other words, Bajana admitted that Mauricio's identification of him was accurate but contended that their interaction was not a robbery. In light of testimonial and forensic evidence likely to be introduced at trial, this was a reasonable strategic decision. And, under this strategy, it would have made little sense for Bajana's lawyer to have called an expert witness to testify regarding the dangers of misidentification during crimes of violence, since Bajana's identity was never in question. Bajana's counsel was not constitutionally ineffective.

4. *Sufficiency of the Evidence*

Lastly, Bajana urges that I grant his habeas petition because the evidence presented against him at trial was legally insufficient to support a conviction. Even on *de novo*

review,[8] this claim is wholly meritless. As the Supreme Court has instructed, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, significant evidence of Bajana's guilt was presented to the jury. Bajana acknowledged that he had an interaction with Mauricio and that Mauricio's blood was on his jacket, and a rational factfinder could have credited Mauricio's description of that interaction and the police officers' testimony that Bajana possessed Mauricio's stolen items. In short, there was legally sufficient evidence that Bajana was guilty of all the crimes charged.

## CONCLUSION

For the reasons provided herein, the petition is hereby denied. No certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 15, 2012
      Brooklyn, New York

---

[8] Bajana did not raise a legal sufficiency claim before the Appellate Division and can no longer raise it in the state courts. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). For the same reasons as with his ineffective assistance and Confrontation Clause claims, I deem his claim exhausted but procedurally defaulted, and relief is thus unjustified on this ground as well. *Aparicio*, 269 F.3d at 90.